NEWLAND et al. v. HUDSON RIVER WATER-POWER & PAPER CO.

(*Supreme Court, General Term, Third Department:* November 30, 1891.)

1. WATER-COURSES—OBSTRUCTION BY DAM.
    In an action to compel the lowering of a dam so as to relieve plaintiffs' mill and water-power above from back-water, it is not enough, to entitle plaintiffs to such relief, to show that the obstruction to their mill by slack water in the tail-race had existed only since the erection of defendant's dam, but it must be shown that such obstruction was actually caused by the dam.

2. SAME—EVIDENCE.
    The difference in level between the surface water at the tail-race of plaintiffs' mill and the top of defendant's dam was 12.45 feet, and the flow over the latter varied in depth from 5 inches to 5 feet. The distance between plaintiffs' mill and the dam of defendant was 12,000 feet, and the water was set back by the latter 8,000 feet, above which point the river flowed through a channel obstructed by three islands, several reefs, and large boulders. *Held*, that these facts did not sufficiently show that the obstruction to plaintiffs' mill by slack water in the tail-race was actually caused by defendant's dam.

Appeal from special term, Saratoga county.

Action by John B. Newland and Mary C. Newland to compel the Hudson River Water-Power & Paper Company to lower its dam across the Hudson river at Mechanicsville so as to relieve the plaintiffs' mills and water-power above from back-water. Judgment for defendant. Plaintiffs appeal. Affirmed.

The plaintiffs own a dam, water-power, and mills at Stillwater, and they and their grantors have owned and maintained the dam and operated mills by means of the water-power for upwards of 50 years. In 1882 the defendant erected its dam. Chapter 406, Laws 1882, authorized defendant to erect a dam across the Hudson river at Mechanicsville, on its own land, "in such a manner as not injuriously to affect the water privilege at Stillwater village as it now exists, or any water privilege now existing between the Stillwater village and lands of the Hudson River Water-Power and Paper Company." The distance between the two dams is 12,000 feet. Before defendant erected its dam, the difference in level between the surface water at the tail-race of plaintiffs' lowest mill and the surface of the water at the point where defendant afterwards erected its dam was 25.53 feet. The difference between the surface of the water at the tail-race of plaintiffs' lowest mill and the top of defendant's dam is 12.45 feet. The defendant's dam sets back the water above it for nearly 8,000 feet up stream. The defendant's dam is about 945 feet long. The water usually flows over its crest or spillway at depths varying from five inches to five feet; the depth, when the river is in its normal condition, being between one and two feet. The defendant's dam is about 16 feet high, measuring from the lowest part of the bottom of the river. The surface of the slack water at the head of the dam is about three feet higher than its surface near the crest of the dam. The surface of the slack water at the head of the dam is six feet lower than the floor of plaintiffs' tail-race, and the distance between the two points is about 4,000 feet; the river flowing through a channel obstructed by three islands and several reefs and many large boulder rocks. The testimony on the part of the plaintiffs tended to show that before the erection of defendant's dam the plaintiffs' mills were free from obstruction by back-water, and that since such erection they have been continually obstructed. The testimony on the part of defendant tended to show that it was impossible, in the nature of the case, for the back-water of defendant's dam to reach the higher level of plaintiffs' tail-races. The trial court was satisfied that the obstruction, substantially as claimed by the plaintiffs, existed, but held that they had failed to show that it was caused by defendant's dam.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Smith & Parmenter*, for appellants. *L. B. Pike*, (*Esek Cowen*, of counsel,) for respondent.

LANDON, J. The main question upon the trial was whether the defendant's dam did injuriously affect the plaintiffs' water privilege. The learned trial court, as we learn from the opinion, was satisfied that since the erection of the defendant's dam the plaintiffs' water privilege has been injuriously affected by back-water. The testimony in support of this contention is practically uncontradicted, and amply justifies the statement of the learned judge that "since the erection of defendant's dam, in 1882 or 1883, there has been some increase in the depth of the water at plaintiffs' mills." This increase appears to have been constant, and its effect was to impair the efficiency of plaintiffs' water-power and mills. But the trial court found that the plaintiffs had not shown that this increased depth of water was caused by defendant's dam. Expert witnesses on the part of the defendant testified that it was an "hydraulic impossibility" for it to be so caused. Expert witnesses on the part of the plaintiffs did not specifically testify to the contrary opinion. They testified that they discovered no other cause than the defendant's dam, and, in substance, that this case demonstrated itself, since the rise of the water followed the erection of the dam so closely as to be convincing that the dam was the cause. The conclusion of the trial court has the support of the testimony of defendant's experts, and we cannot demonstrate that it is erroneous. It is easy to assume certain propositions respecting the slack water

in the defendant's dam acting as an obstruction to the flow of the water from above; as that the retardation of the flowing volume by the slack water at the point of impact causes the flowing volume to flow more slowly immediately above that point, and that the retarded current itself becomes at every point up the stream a new obstruction, retarding the flow above it; and that, this continuing to the plaintiffs' tail-race, would cause the obstruction there. Now, conceding that under certain conditions the phenomenon called the "piling" of water in a flowing stream exists, the conditions which would produce such a result are not so definitely and clearly understood as to enable the judge or juror, in the absence of assistance from expert testimony, to decide correctly respecting its existence or non-existence in a case like this. It may be that the knowledge of the so-called "experts" upon the subject cannot be greatly relied upon when they pass from theoretical propositions to their concrete application. Be this as it may, the burden rested upon the plaintiffs to prove their case, and that required them to show that the defendant's dam was the cause of the back-water at the tail-race of their mills. This they did not do, and hence the judgment must be affirmed. Judgment affirmed, with costs.

LEARNED, P. J., concurs.

MAYHAM, J., (concurring.) I see no sufficient reason for granting a new trial in this case. The plaintiffs, to recover, must establish by proof that their rights have been injuriously affected by the construction of the defendant's dam. This proposition the trial court held that they had failed to maintain. The only evidence on the part of the plaintiffs which is claimed to establish it is the fact that immediately after the construction of the defendant's dam the water rose at the plaintiffs' lower mill. The reason for this is not explained in the evidence. The undisputed evidence is that the difference between the height of the surface of the water at the tail-race of the plaintiffs' lower mill and at the top of the defendant's dam was about $12\frac{1}{2}$ feet. The distance between the dams is about 12,000 feet, and defendant's dam is about 945 feet long, and the depth of the water as it passes over its top varies from 5 inches to 5 feet. There is therefore a difference in height at the time of highest water of $7\frac{1}{2}$ feet. There is a substantial agreement of all the witnesses as to the distance between the dams, and the fall from plaintiffs' to the defendant's in the river-bed; and no witness has undertaken to swear that water would pile up so as to rise above its common level sufficiently to overcome this $7\frac{1}{2}$ feet elevation of plaintiffs' tail-race above the top of the water at highest flood on defendant's dam. To hold that the water from the defendant's dam, upon these facts, could set back so as to interfere with the free flow of water at the tail-race of the plaintiffs' lower mill would seem to reverse all well-known principles governing hydraulics. If the physical facts upon which this case must turn could be changed by further testimony, then there might be some reason for granting a new trial. But the elevations at the different points have been ascertained, and there is no dispute about them. They cannot be altered on a new trial. The natural laws governing the flow of water are quite as unchangeable, and with these material and controlling factors in this case the same result must follow on a new trial as has already been reached by the trial court. It is true that no explanation has been furnished for the somewhat remarkable coincidence of the rise of the water at the tail-race of the plaintiffs' mill at the time of the erection of the defendant's dam, but, unless it is traceable to some natural cause connected with and arising out of the erection of the defendant's dam, we cannot assume, as against well-understood physical laws governing matter, that it was produced by water setting back from this dam. At all events, the burden is upon the plaintiffs to establish that proposition if true, which they

have failed to do.   There is no claim on this appeal that a new trial should be granted on the ground of the newly-discovered evidence.   I think, therefore, that the judgment should be affirmed.   Judgment affirmed, with costs.